2020 IL App (2d) 190712-U
No. 2-19-0712
Order filed June 29, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Du Page County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 19-CF-787 |
| KATRINA Y. HAMILTON, | ) ) | Honorable George J. Bakalis, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE SCHOSTOK delivered the judgment of the court.
Justices McLaren and Bridges concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court did not abuse its discretion in sentencing defendant to five years' imprisonment for burglary: defendant's long criminal history and lack of rehabilitative potential outweighed the mitigating factors of her poor mental health, drug addiction, and financial hardship; and the record refuted her claim that the court did not consider whether probation was appropriate.

¶ 2    Defendant, Katrina Y. Hamilton, was charged with retail theft (720 ILCS 5/16-25(a)(1), (a)(3), (f)(2) (West 2018)) and burglary (720 ILCS 5/19-1(a) (West 2018)). She entered an open plea of guilty to burglary; the theft charges were dismissed. The trial court sentenced her to five years' imprisonment. On appeal, defendant argues that her sentence is excessive. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4     The charges were based on the allegation that, on January 28, 2019, defendant did not pay full retail value for shoes she took from a Marshall's store in Yorktown Center. The burglary count alleged that she entered the store intending to commit a theft therein. The court accepted the plea and ordered a presentencing investigation report (PSIR).

¶ 5     The PSIR, filed on July 10, 2019, provided the following information. Defendant was born January 29, 1971. An investigator for the parent company of Marshall's stated that, in 2019, defendant had caused a total loss of $803.87 by thefts at the Yorktown Center store and three Cook County stores. In a letter to the trial judge, dated July 1, 2019, defendant apologized for her offenses and said that her six-month old child had become seriously ill as a result of defendant's drug problems.

¶ 6     Defendant had no juvenile record, but her history of adult offenses took up approximately seven pages and listed more than 40 separate convictions. The vast majority were nonviolent. The earliest was a 1990 conviction of theft. Among the more serious convictions thereafter were possession of a controlled substance (1991) (14 months' probation); illegal possession of prescription forms (1994) (24 months' probation and 6 months' inpatient drug treatment); theft (1995) (6 months' periodic imprisonment and 24 months' probation, terminated unsatisfactorily in 1996); retail theft (1996) (12 months' imprisonment); retail theft (1997) (24 months' imprisonment); retail theft (1999) (24 months' imprisonment); retail theft (2002) (30 months' probation, with Treatment Alternatives to Street Crime (TASC) (20 ILCS 301/40-5 *et seq.* (West 2002)), probation revoked in 2004 with resentencing to 54 months' imprisonment); retail theft (2003) (30 months' probation with TASC, probation revoked with resentencing to 150 days' time considered served in jail); retail theft (2003) (24 months' drug court probation, terminated

unsatisfactorily in 2004); retail theft (2005) (24 months' probation with TASC as condition, probation revoked in 2005 with resentencing to 24 months' probation, probation revoked in 2006 with resentencing to 5 years' imprisonment with TASC); retail theft (2006) (12 months' imprisonment); aggravated battery (2009) (24 months' mental health probation, terminated unsatisfactorily); retail theft (2010) (24 months' imprisonment); retail theft (2012) (24 months' imprisonment); theft (2013) (18 months' imprisonment); theft (2015) (12 months' imprisonment); retail theft (2016) (24 months' imprisonment); theft (2016) (12 months' imprisonment); and theft (2019) (12 months' imprisonment).

¶ 7    The PSIR stated that defendant had two adult children. A daughter, born January 3, 2019, might need a liver transplant because of complications from defendant's drug use during pregnancy. Defendant resided in Chicago with her boyfriend. She dropped out of high school in her junior year in 1984 and had been unemployed for the last 10 years. Her boyfriend supported her financially.

¶ 8    The PSIR stated that defendant reported that she started using heroin at age 19 and increased her level of use over time. In 2002, an alcohol/drug evaluation recommended residential treatment. On June 11, 2003, defendant began treatment at Safe Haven in Chicago, but, on August 4, 2003, her treatment was terminated for her noncompliance, unauthorized movements, tardiness to meetings, and verbal threats to staff. Defendant stated without verification that, in 2007, she completed 28 days of residential treatment at Safe Haven but did not follow a recommendation for outpatient treatment. On June 6, 2019, a TASC evaluation diagnosed her with a severe opioid disorder and recommended intensive outpatient treatment.

¶ 9    According to the PSIR, defendant reported that she was currently taking prescribed medicines for schizophrenia and depression. Her report was not verified. She also stated that she

had received psychiatric and mental health counseling in 1990 and 2010, but the investigator could not find listings for either hospital at which defendant had reportedly been treated.

¶ 10    On July 15, 2019, the trial court held a sentencing hearing. There was no testimony. The State noted that defendant had been found guilty 29 times of theft or deception, had been incarcerated 14 times, and had had her probation terminated unsatisfactorily 5 times. The State asked the court to sentence defendant to seven years' imprisonment. Defendant argued that she wanted to address her drug addiction. She had been given opportunities in the past and had failed to follow through on them, but she was "at a different place in her life now." She requested probation with TASC as a condition.

¶ 11    The judge stated that he had reviewed the PSIR and considered the pertinent factors in aggravation and mitigation. By his count, defendant had 22 prior felony convictions and had been imprisoned 14 times. When she was given probation, she had "basically been a failure." Defendant had been granted probation with TASC four times and failed each time; had been granted drug court twice and failed once; and had been granted mental health court three times and failed each time. The judge concluded, "[t]he problem with [defendant] frankly is she cannot in any way, for whatever reason, comport herself to the requirements of the law." The court continued, "She is going to continue to offend if she is out on the street." He pronounced a sentence of 5 years' imprisonment and recommended that defendant be placed in a facility where drug treatment was available. After her motion to reconsider sentence was denied, defendant timely appealed.

¶ 12                                    II. ANALYSIS

¶ 13    On appeal, defendant contends that her five-year prison sentence is excessive. She argues specifically that (1) the trial court did not sufficiently consider certain factors in mitigation,

including her mental health history, her drug addiction, and the hardship that imprisoning her might work on her infant daughter; and (2) the court did not consider whether probation was appropriate under section 5-6-1(a) of the Unified Code of Corrections (Code) (730 ILCS 5/5-6-1(a) (West 2018)).

¶ 14    The trial court has broad discretion in sentencing, and we may not disturb a sentence that is within the statutory limits unless it is greatly at variance with the spirit and purpose of the law or manifestly disproportionate to the nature of the offense. *People v. Stacey*, 193 Ill. 2d 203, 209-10 (2000). If mitigating evidence was before the court, we presume that the court considered it, absent some indication otherwise. *People v. Ressa*, 2019 IL App (2d) 170439, ¶ 53. Where the record shows that the court acknowledged the PSIR, we presume that the court took into account the defendant's rehabilitative potential. *People v. Colbert*, 2013 IL App (1st) 112935, ¶ 25.

¶ 15    Defendant contends first that the record does not establish that the judge sufficiently considered her history of mental illness, her drug addiction, and the potential hardship that incarceration would cause her infant daughter. Her argument is based on negative inferences from the judge's explanation of his sentencing decision. However, this reasoning simply shifts the burden to the State to show that no error occurred. The factors that defendant lists were detailed in the PSIR and raised at the sentencing hearing. Moreover, the judge discussed defendant's rehabilitative potential, to which the first two factors are primarily pertinent. The judge explicitly addressed defendant's history of mental illness and drug addiction, noting specifically that she had failed to take advantage of her opportunities to deal with these problems by following through with several offers of treatment. Finally, the judge specifically recommended placing defendant in a facility where drug treatment was available.

¶ 16　Further, we note that defendant's mental-health history consisted primarily of self-reporting that was not corroborated by independent investigation.  Also, defendant stated that she had been unemployed for a decade and was contributing little to her own support.  Therefore, her imprisonment would not work economic hardship on her daughter.  The judge had ample reason to conclude that neither defendant's mental-health history nor the needs of her child outweighed her long-standing inability to rehabilitate herself or to moderate her nearly incessant criminal activity.

¶ 17　The record not only fails to rebut the presumption that the judge considered the factors that defendant cites but shows affirmatively that he did consider most of them.  He did not find these factors mitigating to the degree that defendant hoped.

¶ 18　Defendant contends second that the judge failed to follow the dictates of section 5-6-1(a) of the Code, which reads:

> "(a) Except where specifically prohibited by other sections of this Code, the court shall impose a sentence of probation or conditional discharge upon an offender unless, having regard to the nature and circumstance of the offense, and to the history, character and condition of the offender, the court is of the opinion that;
>
> > (1) his imprisonment or periodic imprisonment is necessary for the protection of the public; or
>
> > (2) probation or conditional discharge would deprecate the seriousness of the offender's conduct and would be inconsistent with the ends of justice."  730 ILCS 5/5-6-1(a)(1), (a)(2) (West 2018).

Defendant argues that the trial judge disregarded the commands of the foregoing language.

¶ 19    The record refutes defendant's argument.  The judge stated that defendant had received probation numerous times but had "basically been a failure."  Not only did the judge emphasize "the history, character and condition of the offender," (730 ILC 5/5-6-1(a) (West 2018)), he implied that her imprisonment was "necessary for the protection of the public" (*id.* § 6-1(a)(1)) because she was incapable of obeying the law.  This conclusion was well warranted, given defendant's extreme recidivism and the proven futility, over more than two decades, of showing her leniency through probation.

¶ 20    Moreover, section 5-6-1 of the Code did not require a sentence of probation instead of imprisonment; the choice of penalty was still within the trial court's discretion.  See *People v. Ruskey*, 149 Ill. App. 3d 482, 494 (1986).  Defendant's reliance on this provision is unavailing.

¶ 21    Finally, to the extent that defendant contends that her sentence was excessive under all the circumstances, we disagree.  The sentencing range for her conviction was three to seven years' imprisonment (see 720 ILCS 5/19-1(b) (West 2018) (burglary is a Class 2 felony); 730 ILCS 5/4.5-35(a) (West 2018) (range for Class 2 felonies is three to seven years).  Defendant's sentence is in the middle of the range.  Considering her extremely long criminal record and the proven ineffectiveness of lesser punishments, her five-year sentence is not excessive.

¶ 22                                III. CONCLUSION

¶ 23    For the reasons stated, we affirm the judgment of the circuit court of Du Page County.

¶ 24    Affirmed.